Argued at Pendleton May 1; affirmed May 31, 1939

# MAIER *v.* THE DALLES & SOUTHERN RAILROAD CO. ET AL.

(90 P. (2d) 782)

In Banc.

*Roscoe Krier,* of The Dalles (Galloway & Krier, of The Dalles, on the brief), for appellant.

*F. J. Betz,* of Portland (A. C. Spencer, of Omaha, Neb., and Roy F. Shields, of Portland, on the brief), for Union Pacific Railroad Company.

*Carey, Hart, Spencer & McCulloch,* of Portland, and *Brown & Van Vactor,* of The Dalles, for Hyman-Michaels Co.

*Brown & Van Vactor,* of The Dalles, for The Dalles & Southern Railroad Company.

*F. L. Phipps,* of The Dalles, for Kerr-Gifford & Company.

KELLY, J. On the 23d day of February, 1907, the Eastern Oregon Brewing Company, an Oregon corporation, then being the owner of the premises in suit, the same being a portion of block 25, in Laughlin's Addition to The Dalles City, Oregon, made, executed and delivered to the Great Southern Railroad Company, a Washington corporation, à deed granting to said railroad company, its successors and assigns, the right to construct and operate a standard gauge railroad over a prescribed course in said block 25, which deed is recorded at page 597 of volume 43, record of deeds in and for Wasco county, Oregon. In said deed the center line of said right of way is particularly described.

The right of way involved in this case was used in the operation of an industrial spur track thereon and not as a part of the main line of railroad operated by the grantee and its successor in interest.

Said above mentioned deed contains the following provision:

"The right of way hereby granted is given upon the conditionns, that, in case the said right of way shall be vacated or abandoned by the grantee, its successors or assigns, or in case it or they shall cease to operate said railroad or it shall ever become impossible for the grantee, its successors or assigns, to operate its cars or locomotives over said right of way on account of being unable to lay its tracks or operate its cars across any of the streets of Dalles City, then and (—) either of said events, the right of way hereby granted shall revert to and revest in the grantor herein, its successors or as-

signs, and the grantee will thereupon remove all of its property therefrom.''

Plaintiff, as assignee and successor in interest of said brewing company, contends that the successors and assigns of said grantee, Great Southern Railroad Company, abandoned said right of way and ceased to operate said railroad; and therefore said right of way has reverted to and revested in plaintiff.

The title to the servient estate in suit passed by foreclosure proceedings to P. J. Stadelman, trustee, and from him through mesne conveyances to plaintiff. Some time prior to obtaining title to said estate, that is during the year 1928, plaintiff leased said property and held the same under said lease until title thereto vested in plaintiff. On or about December 13, 1933, all of the properties and franchises of said Great Southern Railroad Company were sold to defendant, The Dalles & Southern Railroad Company.

During the spring of 1934, the State Highway Commission desired to relocate the east approach of the state highway to The Dalles, and, at that time, proposed to lower the grade of the highway which would have necessitated lowering the grade of said spur track. At that time pursuant to an oral agreement between The Dalles & Southern Railroad Company, P. J. Stadelman, the State Highway Commission and plaintiff, said spur track was moved off of its original location to a location approximately 19 feet further south.

Taxes against said railroad properties became delinquent; and on August 20, 1935, Wasco county filed a suit in the circuit court of Wasco county against the Great Southern Railroad Company, The Dalles & Southern Railroad Company and others to foreclose tax liens upon the railroad company's property for the

years 1926 and 1930, inclusive, evidenced by a certificate of delinquency for the sum of $40,334.37.

On or about April 1, 1936, such proceedings were had in the circuit court of Wasco county, that a decision was rendered in said delinquent tax foreclosure case in favor of Wasco county and against defendant The Dalles & Southern Railroad Company. After the rendition of this decision, and after petition by the railroad company for rehearing and denial thereof, representatives of The Dalles & Southern Railroad Company opened negotiations with the county court of Wasco county for a compromise and settlement of the tax lien upon the railroad property, and in May or June of that year submitted to the county a compromise offer. This offer was in excess of $35,000.

On April 28, 1936, an informal meeting was held in the county courthouse at Dalles City, presided over by former Public Utilities Commissioner Frank C. McColloch and attended by the county judge and commissioners of Wasco county, John W. Kaste, attorney for The Dalles & Southern Railroad Company, representatives of The Dalles Chamber of Commerce, the Union Pacific Railroad and of the several industries served by The Dalles industrial track, and by Roscoe Krier, one of plaintiff's counsel. At this meeting Mr. Kaste stated that The Dalles & Southern would discontinue switching service on the industrial track May 1, 1936, unless revenue of $200 a month was assured, but offered to lease to the interested shippers or any one concerned, a locomotive with which to perform such switching. Mr. Kaste further offered to trade with Wasco County some untaxed trackage near the southerly terminus of The Dalles & Southern main line near Friend, in exchange for The Dalles switching

track. At the same meeting, County Judge Phipps "emphatically brought out that in the event the railroad line was acquired by Wasco County, it would not be turned over to junk dealers". While this meeting resulted in no immediate solution of the problem, the industries did not lose interest in the subject and negotiations were continued during the summer.

Referring to this meeting, President Hull of The Dalles & Southern testified that he did not authorize attorney Kaste to commit the railroad company to the abandonment of this industrial trackage at any time.

On or about May 1, 1936, switching operations were suspended by The Dalles & Southern, but negotiations for acquisition of the track by the industries served thereby continued, resulting in ultimate acquisition by Kerr-Gifford Company one of the industries.

On May 7, 1936, plaintiff and his attorneys Messrs. Galloway & Krier, wrote a joint letter to Dalles & Southern Railroad Company and to Wasco County, asserting that the railroad company had abandoned operation, and that plaintiff had taken possession and control of the right of way across block 25, Laughlin's Addition, giving notice to remove the railroad track from the property and threatening to accomplish such removal himself if not done before May 18.

On May 13, 1936, John W. Kaste as attorney for The Dalles & Southern Railroad Company, answered by letter the plaintiff's notice of May 7, stating, among other things, that the railroad property was subject to lien in favor of Wasco County for taxes in the sum of $52,000; that at the meeting of April 28, 1936, "Judge Phipps stated that under no circumstances would Wasco County sell the rails and ties and junk of the railroad to any person unless such person would posi-

tively agree and bind himself to maintain the industrial spur within the city, consisting of approximately one mile and six-tenths of the track;" that Wasco County would likely become the owner of the railroad; concluding with the suggestion that the plaintiff "deal entirely with Judge Phipps and the county court".

On May 20, 1936, following receipt of notice from the plaintiff, Wasco County instituted in the circuit court a suit against the plaintiff Henry J. Maier and The Dalles & Southern Railroad Company wherein it alleged the notice from Maier and its apprehension that he would proceed to carry his threat into effect, and prayed for an injunction restraining the defendants in said suit from removing or dismantling the track. The plaintiff herein, who, as stated was one of the defendants in said suit, did not appear in that suit. A temporary restraining order was issued by the circuit court on May 23, 1936. Upon compromise and settlement of the county's tax lien on August 5, 1936, the restraining order was dissolved and the injunction suit was dismissed upon stipulation between the county and The Dalles & Southern and no final adjudication was had therein.

On June 6, 1936, The Dalles & Southern Railroad Company and Hyman-Michaels Company made an agreement in writing supplemental to a contract executed October 16, 1935, for the purchase of the railroad east of station 1 thereof. In and by this supplement The Dalles & Southern Railroad Company agreed to sell and Hyman-Michaels agreed to buy for additional consideration of $2,000, all of the industrial track serving industries in Dalles City and right of way therefor being the track from station 0 to station 1. This agreement like the one of October 16, 1935, was condi-

tioned upon the settlement of Wasco County's tax lien. The agreement of June 6, 1936, involved negotiations between the county, The Dalles & Southern Railroad Company and Hyman-Michaels, throughout which the county insisted that said industrial track in Dalles City be maintained intact for the benefit of the industries and community. At one stage of the negotiations The Dalles & Southern Railroad Company by President Hull, had offered to sell the industrial track for $10,000, later receding to $5,000, and sale to Hyman-Michaels Company was finally made for $2,000, which was the consideration agreed upon between Dalles & Southern, Hyman-Michaels and the county, as reflected by the compromise order of the county court hereafter referred to.

On August 5, 1936, Wasco County agreed with Dalles & Southern and Hyman-Michaels to accept the sum of $35,134 in full satisfaction and payment of its tax lien of $52,000. Before this settlement and as a condition thereof, both The Dalles & Southern and Hyman-Michaels Company had definitely agreed with Wasco County that they would sell The Dalles industrial track to any of the industries wishing to acquire it, for the sum of $2,000. This condition was incorporated in the county court's order of August 5, 1936, approving the settlement. At pages 16-17 of that order appears the following:

"Whereas, there is a certain industrial track in the City of The Dalles serving certain industries in said City, over which said railroad companies heretofore rendered switching service, and said The Dalles & Southern Railroad Company has obligated itself, in the event that the compromise of taxes as herein outlined is accomplished, to offer to sell said industrial track together with easements over lands for use of said

track, to said industries so served, or any of them, for the sum of $2,000 if said industries, or any of them, shall within a reasonable time after the accomplishment of said settlement of taxes indicate a desire to purchase said track and easements.''

On the same day the district attorney and counsel for the railroad company signed a stipulation for the dismissal of the tax foreclosure suit, which stipulation referred to and incorporated the county court order of August 5, and order of dismissal was entered by the circuit court upon this stipulation. Simultaneously stipulation and order were made and entered dismissing the injunction suit.

Preliminary to this final settlement, Wasco County had invited bids for the railroad property. Hyman-Michaels Company was the highest bidder. The county's negotiations for disposal of the entire line were predicated upon operation of the Dalles City industrial track by the purchaser for the purpose of serving the industries. Upon completion of the tax settlement, the county requested Hyman-Michaels to provide switching service.

On August 8, 1936, The Dalles & Southern Railroad Company conveyed to Hyman-Michaels Company all trackage and right of way from the Union Pacific connection westerly, including the entire industrial track, and Hyman-Michaels took possession thereof. Immediately thereafter Hyman-Michaels commenced rehabilitation of the track and brought a locomotive to The Dalles for the purpose of switching as and when required, and held itself in readiness to perform switching service on the industrial track within a week after taking possession of the property. On August 15, Mr. Pennoyer, Manager of Hyman-Michaels Company,

wrote a letter to the general freight agent of the Union Pacific at Portland, stating in part:

"We are also arranging to give the five shippers on the tracks at The Dalles, switching service whenever it is convenient for us to do so."

On August 22, 1936, the plaintiff, Henry J. Maier, commenced this suit in the circuit court of Wasco county, naming as sole defendant The Dalles & Southern Railroad Company, and thereafter on September 5 filed an amended complaint adding as a second defendant the Hyman-Michaels Company.

During the interval from September to December, 1936, inclusive, Hyman-Michaels dismantled the main track east of Union Pacific connection from Dalles City to Friend (covered by contract of October 16, 1935), but left intact the portion west of the Union Pacific connection, including the entire industrial track (covered by supplementary contract of June 6, 1936.

On December 18, 1936, Hyman-Michaels Company conveyed to Kerr-Gifford & Company the mile of track westerly from the Union Pacific connection, including the entire industrial track and right of way therefor for consideration of $2,000. The grantee, Kerr-Gifford & Company is the owner of a flour mill and grain warehouse and is also the lessee of a grain elevator located in block 19, Laughlin's Addition, Dalles City. This industry and others were and are wholly dependent for rail service upon the industrial track here involved, and the elevator and other facilities of Kerr-Gifford would be useless without the track. This company was greatly concerned that operation of this industrial trackage be continued. Its traffic manager, the witness Clay, took an active part in the meeting of

April 28, 1936, and in the ensuing negotiations which continued throughout the summer of 1936. Immediately upon learning that Hyman-Michaels Company had acquired the industrial track from The Dalles & Southern by deed of August 8, 1936, Mr. Clay contacted the attorneys for Hyman-Michaels and opened negotiations for purchase of the track. These negotiations were continuous from that time until the track was conveyed by Hyman-Michaels to Kerr-Gifford in December. Kerr-Gifford's switching requirements were seasonal and furthermore its shipments of grain from Dalles City were suspended during the Pacific Coast maritime strike extending from October 27, 1936, to January 28, 1937, and Kerr-Gifford did not request switching service on the industrial track by The Dalles & Southern or Hyman-Michaels between April 30, 1936, and the acquisition of the track by Kerr-Gifford in December, 1936.

On December 23, 1936, a few days after acquiring the industrial track and right of way by the deed, Kerr-Gifford & Company conveyed the same track and right of way to Union Pacific Railroad Company by deed, and this conveyance was later confirmed by quitclaim deed from The Dalles & Southern to the Union Pacific dated April 14, 1937. The Union Pacific immediately took possession and made improvements to the track at expense of approximately $1,800. It operated an engine on the track on January 30, 1937, and commenced regular switching service thereon February 7, 1937, which service has been continuous since that time. Improved connection between the track and the Union Pacific main line was established.

Plaintiff's charge of abandonment of the right of way in suit is not based upon the change in the loca-

tion of the spur track which was made in the spring of 1934 as aforesaid; but rests upon the following circumstances:

1st. Filing a petition to the Interstate Commerce Commission containing the following statements:

"That the applicant is a carrier by railroad, subject to the Interstate Commerce."

"That the route of said railroad is southerly from The Dalles, Wasco County, Oregon, to Friend, within said county and state. The total length of said railroad is 41.79 miles * * *."

"That the applicant desires the cessation of its railroad operation as well as the abandonment of the railroad line."

"That the railroad line is not in receivership but is financially involved and is unable financially to continue the operation of said railroad or the maintenance thereof."

"That the reasons for the abandonment of the above railroad is due to the fact that with the improvements of public highways, gasoline motor trucks have invaded this territory to the extent that there is not a sufficient volume of business remaining in the territory to defray the expenses of operating the railroad, exclusive of the upkeep thereof."

"That this application for abandonment is made pursuant to the resolutions of the stockholders and the Board of Directors of The Dalles & Southern Railroad Company, adopted at the meeting held in the City of Portland, State of Oregon, on June 27, 1935."

2d. Notification to three shippers by Mr. Stephen A. Hull, president of said railroad company, personally and orally that from and after April 30, 1936, said defendant, railroad company, would discontinue operations and would accept no more switching.

3d. Statement of Mr. John W. Kaste, attorney for said defendant railroad company, made at a meeting in

The Dalles, Oregon, called by the Public Utilities Commissioner of Oregon, to the effect that from and after April 30, 1936, unless certain conditions were met, the defendant company would discontinue switching and abandon all operations.

4th. Statements and a denial made in an answer filed by defendant railroad company in a suit for an injunction instituted by Wasco County against said railroad company and others, which statements were to the effect defendant railroad company was not an operating railroad; that it intends to abandon its operations as a railroad company and it has heretofore abandoned the operation of said railroad, and which denial was one denying that it is practicable to operate that portion of the railroad within the city of The Dalles.

5th. Testimony on the trial of the instant case given by Mr. Hull to the effect that defendant railroad company did not operate the switch after May 1, 1936, because it did not want to take any more loss, and Mr. Hull's further testimony that the statement in said petition to the Interstate Commerce Commission to the effect that the applicant desires a cessation of its railroad operations as well as the abandonment of its railroad lines meant that "we wanted to abandon our main line".

6th. Execution of option for the purchase by Mr. J. K. Elder of the property of defendant railroad company; and subsequent agreement to sell said property to defendant Hyman-Michaels Company; and

7th. The letter of May 7, 1936, written by plaintiff to defendant railroad company and to Mr. H. W. Scherrar, county clerk and clerk of the county court of Wasco county claiming the right of possession and control of the right of way in suit, together with the

storage on said right of way by plaintiff of barrels and other articles, and the placing by plaintiff's tenant of a water pipe and maintaining the same upon and over the railroad track upon said right of way from about July 1, 1936, until sometime in February, 1937.

An analysis of the petition to the Interstate Commerce Commission, in the light of the oral testimony herein, discloses that the defendant railroad company sought permission to abandon only its main track and excepted from such proposed abandonment the spur track in suit.

The statements of Mr. Hull and Mr. Kaste, as well as the statement in the answer of the railroad company in the injunction suit and the testimony of Mr. Hull in the instant case, mentioned in the foregoing second, third and fifth specifications, urged in support of the charge of abandonment, must be considered in the light of other declarations by said parties, and because of the interest of Wasco County in said railroad by reason of its tax liens, consideration must also be given to the terms of the agreement of compromise upon which the suit foreclosing such tax liens was dismissed.

Both Mr. Kaste and Mr. Hull gave expression at other times to the view that the operation of said spur track would be continued. As stated, the county, through its county judge, insisted that no sale of said spur track would be approved if the same were to result in making junk thereof.

As stated, the order of the county court filed August 5, 1936, authorizing the compromise in said tax foreclosure case required the railroad company to offer the right of way in suit to industries served thereby, or any of them, at and for the price of $2,000.

It is said that actions speak louder than words. The railroad company actually sold the track and right of way in suit to Hyman-Michaels Company under a requirement that Hyman-Michaels Company would permit the purchase of said spur track by the industries served thereby, or any of them, for said sum of $2,000, which was the sum paid by said Hyman-Michaels Company. In accordance with this requirement, said right of way in suit was sold by Hyman-Michaels Company to Kerr-Gifford Company and by Kerr-Gifford Company the same was sold to defendant, Union Pacific Railroad Company.

The record discloses that Hyman-Michaels Company, Kerr-Gifford Company and Union Pacific Railroad Company, during their respective ownerships thereof, were either in readiness at all times to operate said spur track or were actually operating it.

The statement in the railroad company's answer in said injunction suit, as set forth in the foregoing fourth specification, may well be construed as applying only to the main line of said railroad and not to the spur track in suit and the denial therein falls short of a statement of abandonment.

The option of J. K. Elder mentioned in specification six expired without any transfer being made; and the sale to Hyman-Michaels Company was subsequently attended by a supplemental agreement in accordance with the terms imposed by the county court of Wasco county as one of the terms and conditions upon which said county's lien for taxes was settled and compromised and the suit to foreclose same dismissed.

The letter of May 5, 1936, written by plaintiff, as stated in the seventh specification, is a self-serving declaration; and we think that the storage by plaintiff of

barrels and other articles upon the right of way and laying a water pipe on said track were at most acts of trespass on plaintiff's part.

We agree with the learned trial judge that abandonment of the right of way in suit was not proved.

Plaintiff's cause of suit depends upon proof of the alleged abandonment of the easement in question as a basis for invoking the reversionary clause in said deed of February 23, 1907, from the Eastern Oregon Brewing Company to the Great Southern Railroad Company. The proof being insufficient upon that phase of the case, no error was committed by the rendition herein of a decree in favor of defendants.

The decree of the circuit court is affirmed.

BAILEY and LUSK, JJ., not sitting.